May it please the court, I'm Douglas Letter from the United States Department of Justice here representing the respondent appellant urging reversal. Your honor, if it pleased the court I'd like to save five minutes for rebuttal if if that works with your questioning. With me today at council table is Mr. Assistant U.S. Attorney Daniel Goodman. Mr. Goodman was the the lead trial attorney for the United States before the district court. Your honors, it's essential to understand right at the outset what the government is arguing and not arguing here. We are not arguing that the Secretary of State can extradite Mr. Trinidad despite any kind of belief by the United States that he would be extradited. We will not extradite anybody unless the secretary has determined that it is and there'll be some too many negatives in here. I'll state it in the positive in a moment. It's not more likely than not that somebody will be tortured or in the receiving country. In other words, if it's likely somebody will be tortured, that person under the law will not be extradited. So I wanted to make clear right up front that this is a situation where that is the policy of the United States. Mr. Norrell, let me ask you this so that I understand exactly what the issue is. Your position is, though, that the secretary would have the discretion to make that decision without any judicial review. Is that right? That is correct, Your Honor. When you say discretion, remember, here it's we believe the secretary makes the determination about whether the fugitive is more likely than not to be tortured. It's not a discretionary decision. She has to make that determination. But once she makes that determination, based on the language of the Real ID Act and the Supreme Court's decision in Munaf, Your Honor is exactly correct. We believe that that is a decision that must be respected by the courts. And jumping right to that, as I say, our position is based on the plain language of the Real ID Act, which was passed in 2005, and the Supreme Court has decided that it is not a discretionary decision. But we do think that it is a decision that must be respected. With respect to the Real ID Act, I might agree with you that I would read it the way you do, but it doesn't look like the Nadarraja Court agrees with you. Your Honor, in that decision did not involve an extradition case. That involves an immigration removal or asylum decision. So we don't think it is directly on point. We don't think... It says this provision, meaning the Real ID provision, only applies to federal habeas corpus jurisdiction over final orders of removal. By its terms, the jurisdiction stripping provision does not apply to habeas corpus petitions that do not involve final orders of removal. I don't know how we get around that. Well, again, Your Honor, our position is the Court stated that. You've accurately quoted it, obviously. But that was done in the context of an immigration case. And what we're saying is that this is quite different because it is an extradition situation where... I had the same problem with the language there, because even though that may have been a immigration case, isn't that language almost identical to the language in the FAR Act? Let's see. Section, I think it's 2242... D, I think. D, right. Where is the... And I copied the section, and I'll have to admit it's one of those laws that are not easy to understand. And it uses that same language that it's subject to review and a final order of removal. Right. And, Your Honor, if you want the language of that section, you will find it in the back of our brief, the addendum at 1A. That's the statute right here. But I want you to tell me what that means, if it doesn't mean extradition matters. What we read, the FAR Act and the Real ID Act together, is essentially as the Fourth Circuit did in the Miranescu case, and as the D.C. Circuit has in the Kiamba case very recently, that what Congress has provided is, and again, the very clear language of the Real ID Act is, notwithstanding any other provision of law, a petition for review, etc., shall be the sole and exclusive means for judicial review of any cause or claim under the CAT, the Convention Against Torture. So, in our view, that language is absolutely clear that when the, if the claim is not an immigration claim, then the CAT, the claims under the CAT are not cognizable. And as you point out, there is some difference between that and the FAR Act, because the FAR Act doesn't refer specifically to the habeas statutes. That's the key difference. But otherwise, Your Honor is right. The language is very similar. The, in addition, we would say that this reading should be done in conjunction with the Supreme Court's decision in Munaf, where the Supreme Court held, and I'll just quote for a moment, the judiciary is not suited to second-guess such determinations, and not quoting right now, such determinations are determinations that somebody, a fugitive, can be transferred to the criminal justice system of another country. Determinations that would require Federal courts to pass judgment on foreign justice systems and undermine the government's ability to speak with one voice in this area. And then jumping. In contrast, the political branches are well-situated to consider foreign policy, sensitive foreign policy decisions, such as whether there is a serious prospect of torture at the hands of an ally, and what to do about it if there is. As Judge Brown stated, we need not assume the political branches are significant diplomatic tools and leverage the judiciary lacks. So in 2008, the Supreme Court said in a very similar situation, that as a matter of constitutional separation of powers, this type of decision, whether to transfer a fugitive to another, a foreign judicial system, is not for the judiciary. Now, my... Didn't they specifically decline to reach a FAR claim in that case? That was exactly what I was going to say next. My friend, Mr. Harbaugh, has said, well, but there was no FAR act claim there. That is correct, certainly, and we acknowledge that in our brief. However, the key is that this statement is part of the reasoning of the Supreme Court. Well, I was going to ask you the same thing about the Nataraja case, and you say, well, that was an immigration case. The language seems pretty clear, what they're telling us, and you say, well, you have to confine it to that case. Because there, we think it's confined to the immigration context. Here, remember, the context that the Supreme Court was making the statement in is virtually identical. Well, no, that was an extradition case. No, the other, I'm sorry, which is... Munaf. Munaf. It was not an extradition case, but it was not an extradition case only because in that situation, the fugitives were under the control of the United States military. Well, for whatever reason, it wasn't brought under the extradition statutes, and it wasn't a FAR case, for whatever reason. It is correct it's not extradition. However, again, the reason we think it is so similar is because it's about transfer of the fugitives from the United States to the criminal justice system of an ally, and so that's why it's very similar to here. You're absolutely right. The Court said there is no FAR Act decision there, but because the language of the Supreme Court's decision is based on the constitutional separation of powers, the FAR Act statutory claim wouldn't undermine the Supreme Court's reasoning. So that's why we very heavily rely on those two together. Just, Mark, one question in my mind about the whole situation was the case several years ago in the Ninth Circuit, and whether it would be binding precedent on this panel, the Correjo Barreto v. Seifert case. That was in 2000, and then there was the same individual came up before the circuit again in a subsequent case, and then there was an en banc decision with regard to his situation, which had taken so long that the statute of limitations in Mexico had run out. Is it not? Why isn't it? Why didn't it bound this panel in what it decides? Because it very clearly held that there was judicial review of the decision to surrender someone's extradition. And, Your Honor, by the way, I handled all the second aspect of that case. That's a career, actually. Your Honor, we have two arguments there. One is we believe that the original statements by the Correjo majority were dictum, but, as you know, we also argue that they have been superseded, their key rationale has been superseded by the Real ID Act and the Munoz decision. As Your Honor, Judge Silverman wrote for this Court not long ago in the Zotello case, when the key rationale of a decision by this Court has been undermined by a higher court, it is no longer binding law of the circuit, and we think that's applicable here. But alternatively, as I say, we argued successfully to a different panel that those statements were dictum because the panel unanimously had held that a challenge to a decision by the Secretary of State to surrender Mr. Correjo was obviously not right. It couldn't be right because the Secretary hadn't made a decision yet, and therefore there could be. Once the panel recognized that, it had to dismiss for lack of jurisdiction. There was no action involving a decision by the Secretary of State that could be reviewed because the Secretary hadn't made a decision. So the, the, the, when the panel unanimously said this is not right, the, that was it, and any statements made after that about what it would be about jurisdiction would, if later events did or did not happen, would be dictum. You mentioned you wanted to reserve some time, and I see you have about three minutes left. Thank you very much, Your Honor. Thank you, Mr. Litter. May it please the Court. My name is Craig Harbaugh. I represent Mr. Trinidad, the appellee in this case. The district court had jurisdiction to rule on Mr. Trinidad's CAT claim. That decision was dictated by this Court's decision in Correjo and subsequent Ninth Circuit and Supreme Court precedent. Therefore, we ask the Court to affirm. I would like to address three points that the government raised in their argument. First, that the Real ID Act undermines Correjo. Second, that Munoz is clear or undermines Correjo. And then finally, that Correjo is dicta or not binding. First, with regard to the Real ID Act, the government's attempt to distinguish NADARAJA is ineffectual. That court made it clear that the provisions don't extend beyond the removal context. And looking at the text of that statute, as well as the code that it modifies in the legislative history, makes clear that Congress had no intention to reach beyond the removal context to strip habeas corpus for CAT claims. The provision 106 of the Real ID Act amended Section 1252 of Title VIII, the Immigration Code. That title of that section indicates it's referencing judicial review of removal orders. The legislative history of Section 106 states, and I quote briefly, Section 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Clearly, extradition is outside that context, and therefore, the Real ID Act is inapplicable here. Second, with regard to Munaf, the fact that petitioners did not raise a CAT claim places it outside of the court's determination here. But assuming for a moment that the Supreme Court's reasoning in Munaf is somehow relevant, the reasoning does not apply to a CAT determination. In that case, the petitioners had asserted a generic claim of mistreatment at the hands of the prison officials in Iraq. They did not present any evidence, nor did they rely on any statutory violation. And that is the critical hook for any claim raised under a habeas petition, that there must be some assertion of a violation of federal or constitutional right. They did not assert any. Therefore, the Supreme Court held consistent with this Court that the rule of noninquiry prohibits courts from second-guessing a discretionary determination. As the government concedes here, the CAT determination is not discretionary. It's mandatory. And so the Court is faced with an articulable standard, whether there are substantial grounds to believe that the person will be subject to torture upon their return. Now, the government argues that this implicates foreign-relation interests any time the federal courts are involved with reviewing this determination. However, if that's the case, then this would preclude any CAT claim in federal court. And as this Court is well aware --" Except in the context of an order of removal. Well, except in the context of order of removal, that would prohibit habeas review. But, Your Honor, if the government's reasoning is applied to its logical conclusion, this Court could never review a CAT claim in any context, including when it reviews directly from the Board of Immigration Appeals. And so it could not have meant that the Supreme Court intended to bar all statutory or review of statutory violations by the executive in the habeas context. The government has argued, finally, that Cornejo is dicta, and therefore does not bind this Court. The government confuses rightness of the issue with rightness of the claim. The Cornejo Court did not hold or speculate that the Secretary violated CAT in ordering Cornejo's extradition because they hadn't issued a termination. But the issue of whether there was a right to habeas review generally of a CAT claim was squarely presented to the Court. The Court concluded that although a petitioner was entitled to the right, that the timing of that right should limit review following the Secretary's initial determination. And that was consistent with the legislative intent of Congress in enacting the FAR. But, Your Honor, at this point ---- Didn't someone later point out in one of the subsequent decisions that that wasn't even briefed, that the question that's before us today wasn't even briefed and argued in the first Cornejo case? Your Honor, the petitioners had not asserted ---- you are correct in the sense that the petitioners had not asserted an APA claim. But they had asserted a pure violation of the FAR Act, and so that issue was presented to the Court. Now, the Court concluded that because, consistent with congressional intent, it needed to defer. And I'd like to point out that the Court made very clear that had it not found the availability of APA review, that it would have been required to reach the petition on its merits. And that's what found at footnote 2 at page 1007 in that case. Your Honor, but the debate regarding what constitutes dicta or not is no longer an issue in light of this en banc court's decision in Berrapin v. Enemoto. In that case, the Court concluded that regardless of whether a determination was unnecessary to the ultimate disposition, if it's a thorough reasoned discussion, it becomes binding law of the circuit. The government would have this Court disregard not simply a passing comment in the Cornejo decision, but the entire decision, which runs about 13 pages. And that clearly is not consistent with Berrapin. Wasn't that a quote from Judge Kuczynski, who was on the panel in the first case and said that it didn't apply to anything other than the determination made by the magistrate under the specific provisions of extradition? Your Honor, to clarify. I mean, that's just sort of inconsistency there, yeah. If that's the case. Because in the concurrence, Judge Kuczynski indicated that their decision was limited. No, you quoted a reason that would make the decision with regard to judicial review of the Secretary's decision. In the original Cornejo case, you quoted a definition of dicta that would broaden what I always thought of as dicta. And if I recall correctly, that quote was from Judge Kuczynski, who in the original Cornejo case held in a concurring opinion that it only, he only joined the decision with regard to the habeas corpus petition before the magistrate judge to determine whether there's an expedition treaty, not an expedition treaty, a treaty that allows the subject and whether there's probable cause to believe that he committed the crime in the country he's from. Am I making any sense? Your Honor, I just ---- And it's a small point, so don't waste your time on that. I understand, Your Honor. And I, regardless of what definition this Court adopts for what dicta means, Bearpen and subsequent precedent establish that if it's a thorough decision, reasoned decision, that it's binding nevertheless. If I may conclude. Sure. National security cannot trump our national values. Those national values as embodied of our laws command that no person shall be tortured nor sent to another country to be tortured. Where the executive fails to abide by those laws, the judiciary has a necessary and critical role. Habeas, narrow habeas refu, further limited by the APA, establishes that narrow role. It limits it to simply requiring the executive to make a reasoned determination. It is not second-guessing their judgment, but ensuring that they comply with the FAR Act. The district court correctly held that the secretary's refusal to produce any evidence to contribute the overwhelming evidence that Mr. Trinidad's co-defendants have been tortured and the ongoing practice of torture in the Philippines left her with no choice but to grant belief. On that basis, we ask the Court to affirm the decision below. Thank you, Mr. Harbaugh. Mr. Letter, you get the last word. Thank you. Just several points. First, I might point out, Mr. Harbaugh, I ended with a statement by national security. This case is not a national security case. This is one where we have Mr. Trinidad is wanted in the Philippines on a regular criminal charge of kidnapping for ransom. So this is a case about implementation of an extradition treaty. If we expect our treaty partners to extradite fugitives to the United States, obviously we need to follow our own extradition obligations. Mr. Letter, I don't want to waste your time or use your last minute, but this case is a peculiar case. The district court ruled, based on the failure of the government to give it certain things that it thought it needed in order to make a decision. When it didn't get it, the district court decided, all right, I have no choice. I must do it. And I think something similar to that kind of language was used. I have no choice. I must do it. Now you're asking us on review, what do we do other than review the record that is before us? Well, Your Honor, you do review the record that's before you. Your Honor, as we have argued, this is, as like the Supreme Court decision in Munaf, what we have said is what the district court wants to inquire into, the Supreme Court said, is beyond the authority of the judiciary under the constitutional separation of powers. So the only reason we provided, there was a record in the district court, but what we did not provide to the district court is precisely what the Supreme Court said in Munaf is not an appropriate subject for the judiciary. So it's not a situation of the United States being recalcitrant or anything like that. We're saying, and indeed, this is identical to Munaf. In Munaf, the Supreme Court denied, overruled the D.C. Circuit and dismissed the habeas petition because of the statements by the Solicitor General that the policy of the United States was not to transfer or extradite when fugitive was like. Torture was likely. So it's an identical situation. If you were going to give us the bottom line of a decision of this court, what would that bottom line be? The bottom line would be that the habeas petition, again, just like in Munaf, must be dismissed because the determination by the Secretary of State on something that is committed entirely to her, it's her determination, a legal determination to be made, can't be inquired into by the judiciary. And the same thing, the D.C. Circuit decision in Cayamba that we have heavily relied on, the Supreme Court denied certain. So it's that the habeas petition must be dismissed because it's asking this court to get into something that's not appropriate for the courts to inquire into. So that's exactly the bottom line. Judge Shulman, if I could just elaborate a little more on the decision that Mr. Harbaugh is heavily relying on. The reason the immigration and extradition context are very different because in extradition, we have a request from a foreign government to implement a treaty. And then when somebody is going to be sent into the criminal justice system of the other country, this is why it raises so heavily the constitutional separation of powers concerns that the D.C. Circuit and the Supreme Court have identified. And so in the immigration context, normally it's simply us taking somebody who is in the United States illegally and sending them to a foreign country. Overwhelmingly, the person will not be involved in any kind of foreign judicial proceedings in that foreign court. And overwhelmingly, it's not on the basis of a request from that foreign government that we implement a treaty. So these really are very different mechanisms. Thank you. Mr. Gillelan, let me ask you one brief question. I don't want you to run over your time. If you can answer this in, I think, 44 seconds. What was the effect, then, of Cornejo 3, which vacated Cornejo 2 and specifically refused to vacate Cornejo 1? I mean, does that tell you anything? What it means is, I think what it tells you is, remember, the Cornejo 1 decision was issued as a stand-alone decision in 2000. The Court clearly, there were no questions about the decision. Whereas the second decision, the in-bank was granted already. And so when the Court vacated the second Cornejo decision, that was against the backdrop of an in-bank grant. So I think all the Court was doing was recognizing, well, we had granted in-bank on the second Cornejo decision, but the first, as I say, had been some years before that. Again, in our view, the first decision was the material being relied on by Mr. Harbaugh's dictum. And in any event, we've had two very key events since then. I hope that answers Your Honor's question. Thank you very much. Thank you. Mr. Harbaugh, thank you, too. The case just argued is submitted. Good morning. Since we're going out of order, let me see who's here. Counsel Ritty on Derrick and Constance LeCorp versus Kim. Kim Singh? I'm sorry. Let me see. Mr. Ross, are you in?           0756058. 0756058. 0756058. 0756058. 0756058. 0756058.
judges: Camp, Farris, Silverman